1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                       CENTRAL DISTRICT OF CALIFORNIA

10

11  OSCAR RIVERA,                        )    NO. CV 04-07767-MAN
                                         )
12                  Plaintiff,           )
                                         )    MEMORANDUM OPINION
13          v.                           )
                                         )    AND ORDER
14  JO ANNE B. BARNHART,                 )
    Commissioner of the                  )
15  Social Security Administration,      )
                                         )
16                  Defendant.           )
    _____)

17

18

19      Plaintiff filed a Complaint on September 22, 2004, seeking review

20  of the denial by the Social Security Commissioner ("Commissioner") of an

21  award of disability insurance benefits ("DIB") and supplemental security

22  income benefits ("SSI").  On October 18, 2004, the parties filed a

23  "Consent to Proceed Before a United States Magistrate Judge," pursuant

24  to 28 U.S.C. § 636(c).  The parties filed a Joint Stipulation on

25  September 13, 2005, in which:  Plaintiff seeks an order reversing the

26  Commissioner's decision and directing the immediate payment of benefits;

27  and Defendant seeks an order affirming the Commissioner's decision or,

28  if reversal is ordered, remanding the case for further administrative

proceedings.  The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff claims to have been disabled since May 1, 1991, due to back pain, prostate problems, and difficulty sleeping. (Administrative Record ("A.R.") 244.)  He has past relevant work experience as a general warehouse worker.  (A.R. 235, 257.)

Plaintiff filed his application for DIB on January 24, 1992.  (A.R. 26-29.)  The Commissioner denied Plaintiff's DIB claim initially and upon reconsideration.  On March 8, 1994, Plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Milan Dostal ("ALJ Dostal").  (A.R. 168.)  ALJ Dostal found that Plaintiff met the insured status requirements of the act through December 31, 1995. (A.R. 13.)  On April 25, 1995, ALJ Dostal denied Plaintiff's claim (A.R. 10-19), and the Appeals Council subsequently denied Plaintiff's request for review of that decision (A.R. 4-6).

Plaintiff then applied for DIB and SSI on July 26, 1996, with a protective filing date of July 2, 1996.  (A.R. 244-53.)  An Administrative Law Judge denied Plaintiff's request for DIB and SSI on January 16, 1998.  (*See* A.R. 294.)  The Appeals Council subsequently remanded the case on January 29, 1999.  (A.R. 293-95.)  On October 5, 2000, Plaintiff, who was represented by a non-attorney, testified at a remand hearing before Administrative Law Judge Sam Warner ("ALJ"). (A.R. 332-64.)  On November 24, 2000, the ALJ denied Plaintiff's claim

(A.R. 234-241), and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision (A.R. 220-22).

### SUMMARY OF ADMINISTRATIVE DECISION

In his November 24, 2000 written decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset of disability on May 1, 1995. (A.R. 240.) The ALJ found that Plaintiff: is a "younger individual"; "has a marginal education"; "and has no transferable skills . . . or transferability of skills is not an issue in this case." (A.R. 238-39.) The ALJ determined that Plaintiff's impairments, lower back pain and a left inguinal hernia, are "severe"; however, Plaintiff does not have an impairment or combination of impairments listed in, or medically equivalent to an impairment listed in Appendix 1, Subpart P, Regulation No. 4. (A.R. 237.)

The ALJ further found "that [Plaintiff's] subjective allegations of severe and disabling pain are not credible to the extent he states," and Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, which includes being able to lift 10 pounds at a time and occasionally items like "docket files, ledgers, and small tools." (A.R. 238.) The ALJ further found that "[Plaintiff's RFC] is limited in performing any repetitive bending, stopping, climbing, crawling, kneeling, pushing, pulling and operating foot controls," which renders Plaintiff unable to perform his past relevant work. (*Id.*) Using Medical-Vocational Guideline Rules 201.19 and 201.25 as a framework and relying upon the vocational expert's testimony, the ALJ found that Plaintiff can perform a significant number of other jobs in the national

economy, such as a "sedentary assembly table worker" and "hand packager." (A.R. 239.) Accordingly, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act. (*Id.*)

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y. of Health and Human Serv.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id*. at 1041; *see also*

4

1  Morgan v. Commiss'r. of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th
2  Cir. 1999); Flaten v. Sec'y., 44 F.3d 1453, 1457 (9th Cir. 1995).

3

4                            **DISCUSSION**

5

6       Plaintiff alleges five issues.  Plaintiff contends that the ALJ:
7  (1) did not comply with the Appeals Council remand order; (2) improperly
8  assessed Plaintiff's RFC; (3) failed to provide an adequate rationale
9  for his rejection of the opinions of Plaintiff's treating and examining
10 physicians; (4) improperly determined that Plaintiff's subjective pain
11 testimony was not credible; and (5) improperly relied on vocational
12 expert testimony.  (Joint Stip. at 7-8.)  The Court addresses the first
13 three issues, as they are related, collectively under Heading A.  The
14 Court addresses issue four under Heading B below, and issue five under
15 Heading C below.

16

17 **A.   The ALJ Did Not Comply With the Appeals Council Remand Order.**

18

19      In its January 29, 1999 remand order, the Appeals Council vacated
20 the ALJ's January 16, 1998 decision for two reasons.  First, the ALJ's
21 decision did not evaluate "the treating source opinions in exhibit 1F,"
22 including Dr. Sherman's June 24, 1992 Follow-Up Report, which stated:
23 "[Plaintiff] is limited to work that does not require forward bending at
24 the waist, sitting or standing for more than one-half hour without an
25 opportunity to change positions or rest his back, or the lifting of
26 objects weighing more than 20 pounds on a repetitive basis." (A.R.
27 294.)  Second, "the [ALJ's] decision [did not] comment on the reported
28 abnormalities found on the MRI done on October 28, 1990, as referenced

                                5

in the report dated April 3, 1997 (exhibit 6F/9)." (*Id.*)

On remand, the Appeals Council ordered the ALJ to:  (1) evaluate Dr. Sherman's June 24, 1992 Follow-Up Report and the MRI taken on October 28, 1990; (2) "[o]btain additional evidence concerning [Plaintiff's] orthopedic impairments in order to complete the [A.R.]" pursuant to 20 C.F.R. §§ 404.1512-13 and 416.912-13; (3) further consider Plaintiff's RFC and "provide rationale with specific references to evidence of record in support of the assessed limitations" pursuant to Social Security Ruling 96-8p; and (4) "evaluate the treating source opinions" and "explain the weight given to such opinion evidence" pursuant to 20 C.F.R. §§ 404.1527 and 404.927 and Social Security Rulings 96-2p and 96-5p.  (A.R. 294-95.)

In his November 24, 2000 decision, the ALJ stated that ALJ Dostal's April 25, 1994 "decision is administratively final.  As such, res judicata has attached to those findings."  (A.R. 235.)  He further stated that "[t]he 1994 decision considered a June 1992 statement of Dr. J.M. Sherman (exhibit 17) and June 1992 followup and an October 1990 MRI (exhibit 12).  The [ALJ] adopts the above findings and considers claimant's medical and vocational evidence as of April 25, 1994." (*Id.*)

Plaintiff contends that the ALJ did not comply with the Appeals Council's remand order, because he did not adequately address the remand order or present  proper rationale for his decision under the Social Security Rulings.  (Joint Stip. at 8.)  Although the record does not indicate that the ALJ failed to obtain additional evidence concerning Plaintiff's orthopedic impairments to complete the record, the Court

agrees that the ALJ did not fully comply with the Appeals Council's remand order.

1.   The ALJ Failed To Consider Evidence As The Appeals Council Ordered.

The ALJ did not comply with the Appeals Council's remand order to address Dr. Sherman's June 24, 1992 Follow-Up Report or the October 28, 1990 MRI, because he only referred to them by stating that ALJ Dostal considered them in his 1994 decision, which is administratively final and, thus, res judicata attached to those findings.  Although the 1994 decision is administratively final, the ALJ must consider Dr. Sherman's June 24, 1992 Follow-Up Report and the October 28, 1990 MRI as the Appeals Council ordered.  *See* 20 C.F.R. § 404.977(b) ("The [ALJ] shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order.").

2.   The ALJ Did Not Properly Consider Plaintiff's RFC.

Social Security regulations define RFC as "an individual's ability to do *sustained* work-related physical and mental activities in a work setting on a *regular and continuing basis*," which "means 8 hours a day, for 5 days a week, or an equivalent work schedule."  Social Security Ruling 96-8p (*emphasis added*).  "In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's 'ability to work on a sustained basis.'"  Reddick v. Chater, 157 F.3d 715, 724 (9th Cir. 1998)(quoting 20 C.F.R. § 404.1512(a);

7

Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995)).  An ALJ must assess
an individual's RFC "based on all the relevant evidence in the case
record, including information about the individual's symptoms and any
'medical source statements' -- i.e., opinions about what the individual
can still do despite his or her impairment(s) -- submitted by an
individual's treating source or other acceptable medical sources."
Social Security Ruling 96-8p. *See also* 20 C.F.R. §§ 404.1545(a),
416.945(a).

    After discussing various rules that apply to determine Plaintiff's
RFC and concluding that Plaintiff was not credible, the ALJ stated that
he:

>    further considers [Plaintiff's] physical examination results
>    and[,] giving him the benefit of the doubt, finds that
>    [Plaintiff] retains the [RFC]:  for sedentary work which is
>    defined as lifting no more than 10 pounds at a time and
>    occasionally lift[ing] or carry[ing] articles like docket
>    files, ledgers and small tools.  [Plaintiff] is limited in
>    performing any repetitive bending, stooping, climbing,
>    crawling, kneeling, pushing, pulling and operating foot
>    controls.

(A.R. 237-38.)

    The ALJ did not comply with the Appeals Council remand order,
because when he determined Plaintiff's RFC he did not "provide [a]
rationale with specific references to evidence of record in support of

the assessed limitations." The record contains 10 physicians' opinions regarding Plaintiff's physical capabilities. *See* A.R. 66-72, 79, 114, 119, 125, 131-32, 142, 299, 301-02, 309-10, 321. However, the ALJ only summarized Plaintiff's examinations by Drs. Eisenberg, Bittar, and Barnett, and he only addressed the latter's opinion regarding Plaintiff's limitations. *(See* A.R. 236-37 - ALJ asserted that Dr. Barnett's finding that Plaintiff has "progressed to a little above the invalid stage" is "out of proportion to Dr. Barnett's examination findings"). The ALJ neither evaluated all the relevant evidence of record nor described how the evidence supports his finding that Plaintiff can perform sedentary work; the ALJ's failure to do so constitutes error. *See* Social Security Ruling 96-8p ("The RFC assessment must be based on *all* the relevant evidence in the case record . . . [and it must] include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

Moreover, the ALJ's RFC assessment is improper, because it does not discuss Plaintiff's ability to do sustained work activities on a regular and continuing basis. Plaintiff has not worked since his alleged onset of disability in May 1991 (A.R. 336), and he testified that he does not believe he could handle a sedentary or sit-down job because he is in pain all the time (A.R. 353). The ALJ did not address Plaintiff's statements that he is in constant pain, which constantly keeps him in bed (A.R. 266, 275, 281), or that he has severe pain after sitting or standing for half an hour (A.R. 59, 180). Also, the ALJ did not discuss any physician's opinion addressing Plaintiff's ability to do sustained

work activities on a regular and continuing basis.  *See* <u>Reddick</u>, 157
F.3d at 724 ("Because the ALJ's evaluation of [RFC] failed to address
claimant's ability to undertake sustained work activity, his analysis
did not comport with the Social Security Administration's regulatory
requirements.").

     3.  <u>The ALJ Did Not Properly Evaluate The Treating Or Examining
Source Opinions</u>.

Ordinarily, the treating physician's opinions should be given
great, if not controlling, weight.  *See* <u>Magallanes v. Brown</u>, 881 F.2d
747, 751 (9th Cir. 1989)(quoting <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1230
(9th Cir. 1987)); 20 C.F.R. §§ 404.1527(a), 416.927(a); Social Security
Ruling 96-2p.  When the ALJ rejects a treating or examining physician's
opinion, even if it is contradicted, the ALJ may reject that opinion
only by providing specific and legitimate reasons for doing so,
supported by substantial evidence in the record.  <u>Lester</u>, 81 F.3d at
830.  In rejecting a physician's opinion "[t]he ALJ must do more than
offer his conclusions.  He must set forth his own interpretations and
explain why they, rather than the doctors', are correct." <u>Reddick</u>, 157
F.3d at 725 (quoting <u>Embrey v. Bowen</u>, 849 F.2d 418, 421-22 (9th Cir.
1987)).  "The [ALJ] is not bound by the uncontroverted opinions of the
claimant's physicians on the ultimate issue of disability, but he cannot
reject them without presenting clear and convincing reasons for doing
so." <u>Matthews v. Shalala</u>, 10 F.3d 678, 680 (9th Cir. 1993)(quoting
<u>Montijo v. Sec'y of Health and Human Serv.</u>, 729 F.2d 599, 601 (9th Cir.
1984)).

The ALJ did not comply with the Appeals Council's remand order, because he failed to "evaluate the treating source opinions" and "explain the weight given to such opinion evidence." The ALJ did not evaluate or explain the weight given to any treating source opinions. (*See* A.R. 235-38.) This constitutes error. *See* 20 C.F.R. § 404.1527(d) ("[W]e will evaluate every medical opinion we receive."); *Id.* at § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

In addition, the ALJ's assertion that Dr. Barnett's opinion is "out of proportion to [his] examination findings, claimant's failure to seek any treatment since 1992[,] . . . [and thus it] is not persuasive" is not a specific or legitimate reason to discredit Dr. Barnett. In his October 3, 2000 evaluation, Dr. Barnett found that Plaintiff: wore a brace and corset; exhibited severe Kyphosis in his spinal alignment; had severe tenderness in his lower back and tendon reflexes; tested positive for sciatic nerve root irritability; had severe tenderness in his deep tendon reflexes; and had weak motor power. (A.R. 321.) He diagnosed Plaintiff with lumbar discogenic disease and opined that Plaintiff is "severely impaired," "a little above the Invalid Stage," "almost bedridden or wheel chair bound," "disabled in the true sense of the word and his prognosis is from poor to grave." (*Id.*) The ALJ erroneously failed to explain how Dr. Barnett's opinion regarding Plaintiff's limitations is out of proportion to his examination findings. *See* <u>Embrey</u>, 849 F.2d at 422 (finding the ALJ erroneously rejected the treating doctor's opinion of disability when "he merely state[d] that the objective factors point[ed] toward an adverse conclusion and ma[de]

11

no effort to relate any of those objective factors to any of the specific medical opinions and findings he reject[ed]").

The ALJ also erred in discrediting Dr. Barnett based on the fact that Plaintiff only sought limited treatment.  Plaintiff adequately explained that he did not seek treatment, other than pain medication, because he could not afford treatment (A.R. 338, 346), and he did not have back surgery, as recommended, because he feared being wheelchair-ridden if there were complications from the surgery (A.R. 340).[1]

For all the foregoing reasons, the Court concludes that the ALJ did not comply with the Appeals Council's remand order.  Furthermore, the ALJ's RFC assessment and rejection of Dr. Barnett's opinion, upon the grounds stated, constitute reversible error.

**B.**   **The ALJ Improperly Discredited Plaintiff's Subjective Pain And Symptoms Testimony.**

The law is well-settled that, once a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to cause some level of pain of the type which the claimant alleges, the claimant's subjective complaints regarding the severity of his or her pain may not be discredited based solely on a lack of objective medical evidence to corroborate the allegations. Tonapetyan v. Halter, 242 F.3d 1144, 1147-48 (9th Cir. 2001); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); Fair v. Bowen, 885 F.2d

---

[1]   The Court will further address Plaintiff's failure to seek medical treatment under Heading B.

12

597, 601 (9th Cir. 1985).  As the Ninth Circuit has explained:

> [A]n ALJ's finding that a claimant generally lacked
> credibility is a permissible basis to reject excess pain
> testimony.  But, because a claimant need not present clinical
> or diagnostic evidence to support the severity of his pain,
> *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990)
> (stating that "it is the very nature of excess pain to be out
> of proportion to the medical evidence"), a finding that the
> claimant lacks credibility cannot be premised wholly on a lack
> of medical support for the severity of his pain.

Light v. Soc. Sec'y. Admin., 119 F.3d 789, 792 (9th Cir. 1997).  This
rule is based on the recognition that pain is an inherently subjective
phenomenon, which cannot be objectively verified or measured and varies
significantly among individuals.  Bunnell, 947 F.2d at 347.

Unless the evidence suggests affirmatively that a claimant is
malingering, the ALJ must provide clear and convincing reasons for
rejecting the claimant's excess pain or symptom testimony, such as
conflicts between the claimant's testimony and conduct, or internal
contradictions in the claimant's testimony.  Dodrill v. Shalala, 12 F.3d
915, 918 (9th Cir. 1993); Light, 119 F.3d at 792.  In determining
whether a claimant's testimony regarding the severity of his symptoms is
credible, the ALJ may consider:  "(1) ordinary techniques of credibility
evaluation, such as the claimant's reputation for lying, prior
inconsistent statements concerning the symptoms, and other testimony by
the claimant that appears less than candid; (2) unexplained or

inadequately explained failure to seek treatment or to follow a
prescribed course of treatment; and (3) the claimant's daily
activities." Smolen, 80 F.3d at 1284.


The Court will give great weight to the ALJ's credibility
assessment. Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990);
Brawner v. Sec., 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that the
ALJ's credibility determination is to be given great weight when
supported specifically). However, when an ALJ's decision rests on a
negative credibility evaluation, "the ALJ must make findings on the
record and must support those findings by pointing to substantial
evidence on the record." Cequerra v. Sec., 933 F.2d 735, 738 (9th Cir.
1991); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995)(the ALJ's
findings must be "sufficiently specific to permit the reviewing court to
conclude that the ALJ did not arbitrarily discredit the claimant's
testimony"). When discrediting a claimant's testimony, the ALJ may not
make only general findings; the ALJ must state which pain or symptom
testimony is not credible and what evidence suggests that the complaints
are not credible. See Swenson v. Sullivan, 876 F.2d 683, 688 (9th Cir.
1979).


In rejecting Plaintiff's credibility, the ALJ explained:

[Plaintiff] was able to get on and off the examining table
without assistance at the time of Dr. Eisenberg's examination
on May 18, 2000 but 6 days later he exhibited great difficulty
performing the same maneuver at the time of Dr. Bittar's
consultative examination. There are discrepancies in exhibits

14

16 and 17 regarding straight leg raising ability and
positivity. Surgery has not been recommended or done. He
stated that he stopped taking pain medication due to an
abnormal liver function testing but has made no effort to
obtain pain relief through any other modalities such as
physical therapy or targeted exercises. Otherwise, he has
refused surgical repair of his hernia and has sought no
treatment for his right elbow pain or irritable bowel syndrome
or history for mild depression complaint. In view of these
conflicting actions and inconsistent behavior, the [ALJ] finds
that [Plaintiff's] subjective allegations of severe and
disabling pain are not credible to the extent he states.

(A.R. 238.)

Plaintiff contends that the ALJ erred in his credibility
assessment. (Joint Stip. at 31-36, 39-40.) He argues that the ALJ did
not provide legitimate or clear and convincing reasons for rejecting his
testimony. (*Id.*) The Court agrees that the ALJ's stated bases for his
adverse credibility finding are inadequate.

Plaintiff's varied ability to get on and off the examining table
and varied straight leg raising ability at Drs. Eisenberg's and Bittar's
examinations is not a convincing reason to discredit him. When Dr.
Eisenberg examined Plaintiff on May 18, 2000, he noted that Plaintiff's
"[s]traight leg raising sign in sitting and lying down positions is
rested at about 15 degrees bilaterally because of back pain." (A.R.
298-99.) On May 24, 2000, Dr. Bittar noted that Plaintiff's right and

15

left straight leg raising were "[n]egative." (A.R. 305.)  The apparent discrepancy between Plaintiff's straight leg raising ability at Drs. Eisenberg's and Bittar's examinations, 15 degrees, is not significant enough to discredit Plaintiff.  In addition, neither doctor stated that Plaintiff was uncooperative or withholding effort in attempting to get on or off the examining table or in raising his legs.  *Cf.* Thomas v. Barnhart, 278 F.3d 947, 953, 959 (9th Cir. 2001)(stating the claimant's "efforts to impede accurate testing of her limitations support[ed] the ALJ's" adverse credibility finding when two examiners noted the claimant withheld effort during testing); Rautio v. Bowen, 862 F.2d 176, 179-80 (8th Cir. 1988)(determining claimant's failure to cooperate during examinations supported the ALJ's adverse credibility finding).

The ALJ also improperly relied on Plaintiff's failure to seek treatment as a basis for his adverse credibility finding.  At the supplemental hearing, the ALJ asked Plaintiff if he received medical treatment for psychological problems and Plaintiff answered:  "That costs me money, and I don't have the money to pay." (A.R. 346.)  The ALJ then said:  "But my question was whether you've received any treatment?"  (*Id.*)  The ALJ then commented:

> I'm disturbed by the fact that basically, I don't see any
> evidence of medical treatment for the last several years.  It
> appears to me that the doctors recommended surgery at one time
> for your back . . . and you declined it.  That they
> recommended surgery for your hernia, and you are wearing a
> belt for that.  And I don't see any evidence of any
> significant treatment for several years. . . .  If you're

16

having so many medical problems, why haven't you gotten any medical treatment?

(*Id.*)  Plaintiff responded that he takes medication for his pain, and "if [he] need[s] another type of medical treatment, [he] need[s] to spend money that [he doesn't] have." (*Id.*)  Plaintiff said he could only afford to get medication from a clinic and treatment from his sister who is a "starting chiropract[or]." (A.R. 338-39.)  Plaintiff also explained that he did not have back surgery, because he feared being "in a wheelchair for . . . life" if something went wrong. (A.R. 340.)  The ALJ appears to have discredited Plaintiff without properly considering Plaintiff's explanations for his failure to seek other medical treatment.  *See* Social Security Ruling 96-7p ("[ALJ] must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment."); *Id.* (stating an individual's explanation for not seeking treatment, such as being "unable to afford treatment and . . . not hav[ing] access to free or low-cost medical services," "may provide insight into the individual's credibility").

Plaintiff adequately explained that he did not seek treatment, other than pain medication, because he could not afford such treatment. Thus, his failure to seek further physical therapy and/or to have surgery on his back or hernia cannot be a basis for discrediting him. "It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical

treatment that may help him." Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995) (quoting Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984)).  *Cf.* Fair, 885 F.2d at 603 (stating a claimant's failure to assert a good reason for not seeking treatment can cast doubt on the sincerity of the claimant's pain testimony).

The ALJ's stated bases for finding that Plaintiff lacks credibility were not legitimate nor clear and convincing.  Accordingly, the ALJ committed reversible error in this respect.

**C.    Further Vocational Expert Testimony Will Likely Be Required On Remand.**

On remand, the ALJ's assessment of Plaintiff's RFC may change, because he must reevaluate it as well as the treating and examining doctor's opinions and Plaintiff's pain and symptoms allegations.  An ALJ must seek the testimony of a vocational expert if the claimant has non-exertional limitations.  *See* Reddick, 157 F.3d at 729 (because the claimant had non-exertional limitations, it was error not to seek the testimony of a vocational expert).  A vocational expert's testimony has no evidentiary value if it is not based on a claimant's complete set of limitations. *See* Embrey, 849 F.2d at 422-24 (in posing a hypothetical to a vocational expert, the ALJ must fully and accurately reflect all of the claimant's limitations).  Thus, the Court does not reach the fifth issue Plaintiff raised (i.e., regarding whether the ALJ properly relied on the vocational expert's testimony), because the ultimate finding regarding Plaintiff's RFC may change and additional testimony from a vocational expert will likely be required.

18

**D.    <u>Remand Is Required</u>.**

Here, remand is appropriate to allow the ALJ the opportunity to correct the above errors.  *See* <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

**CONCLUSION**

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.  Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  July 26, 2006

                                    /s/
                              MARGARET A. NAGLE
                    UNITED STATES MAGISTRATE JUDGE

19